*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0007p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In Re: COMMONWEALTH INSTITUTIONAL
SECURITIES, INC.,

*Debtor.*

No. 03-5050

EXCEL ENERGY, INC.,

*Plaintiff-Appellant,*

*v.*

R. GENE SMITH, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 02-00008—Charles R. Simpson, III, District Judge.

Argued: September 22, 2004

Decided and Filed: January 7, 2005

Before: MARTIN, COLE, and GIBBONS, Circuit Judges.

---

### COUNSEL

**ARGUED:** Donald L. Cox, LYNCH, COX, GILMAN & MAHAN, Louisville, Kentucky, for Appellant. Paul J. Hershberg, SEILLER & HANDMAKER, Louisville, Kentucky, Denise M. Helline, RUCK, WILSON, HELLINE & BROCKMAN, Louisville, Kentucky, for Appellees. **ON BRIEF:** Donald L. Cox, William H. Mooney, LYNCH, COX, GILMAN & MAHAN, Louisville, Kentucky, for Appellant. David M. Cantor, SEILLER & HANDMAKER, Louisville, Kentucky, Denise M. Helline, RUCK, WILSON, HELLINE & BROCKMAN, Louisville, Kentucky, for Appellees.

---

### OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. Excel Energy, Inc., appeals the district court's affirmance of the bankruptcy court's decision to disallow its Proof of Claim against the Estate of Commonwealth

1

Institutional Securities, Inc.  The district court found that the bankruptcy court correctly concluded that Commonwealth was not a seller of securities for purposes of Kentucky securities law, and that Excel never pleaded broker-dealer liability against Commonwealth.  For the reasons that follow, we AFFIRM the district court's judgment.

I.

In March of 1992, Excel purchased a number of shares in Performance Nutrition, Inc., through Commonwealth.  The next month, Excel realized that Performance Nutrition was not NASDAQ-listed and was neither registered nor exempt from registration under Kentucky Blue Sky Laws.  The sale, therefore, was not authorized under Kentucky law.

Thus, in February of 1995, Excel filed a complaint in state court against Commonwealth, R. Gene Smith (Commonwealth's managing director and majority shareholder), and Gerald Brenzel (Commonwealth's president).  In its complaint, Excel introduced Commonwealth as "at all times relevant to this Complaint . . . registered as a broker/dealer under Kentucky Blue Sky Law (KRS Chapter 292)."  The complaint stated these claims:

Count I:     The actions of the Defendant Commonwealth in selling Performance Nutrition Stock to Excel violated KRS 292.340, entitling the Plaintiff to damages.

Count II:    Pursuant to KRS 292.480(2), Brenzel is jointly and severally liable with and to the same extent as Commonwealth for damages.

Count III:   Pursuant to KRS 292.480(2), Smith is jointly and severally liable with and to the same extent as Commonwealth for damages.

Section 292.340 provides:

It is unlawful for any person to offer or sell any security in this state, unless the security is registered under this chapter, or the security or transaction is exempt under this chapter, or the security is a covered security.

Section 292.480(1) provides:

Any person who offers or sells a security in violation of KRS 292.340 . . . or by means of any untrue statements . . . is liable to the person buying the security from him.

Section 292.480(2) provides:

Every person who directly or indirectly controls a seller liable under subsection (1), every partner, officer or director . . . or employee of such seller who materially aids in the sale and every broker-dealer or agent who materially aids in the sale is also liable . . . to the same extent as the seller unless the non-seller [proves] he did not know . . . the facts by reason of which the liability is alleged to exist.

Section 292.340 defines the prohibited act; sections 292.480(1) and (2) define who may be held liable by their participation in the prohibited act.  According to these provisions, one can violate, for our purposes, section 292.340 by participating in a sale of unauthorized securities in two ways: 1) as a seller, under section 292.480(1), or 2) under section 292.480(2) as a broker-dealer or agent who materially aids in the sale, to the extent that the seller is liable.  Excel's complaint demanded "judgment against each of Commonwealth, Brenzel, and Smith, jointly and severally, under KRS 292.480(1) and (2) in the amount of the consideration paid for the unregistered securities sold by Commonwealth."

On October 19, 1995, Commonwealth filed a voluntary Chapter 7 petition in bankruptcy. Excel subsequently filed its Proof of Claim against Commonwealth and attached a copy of its state court complaint. As a result of the Chapter 7 petition, Excel's state court action against Commonwealth was stayed.

State litigation on Excel's section 292.480 claims continued against the other defendants. Smith filed a motion for summary judgment, arguing that even if he controlled Commonwealth, he was not liable because Commonwealth served merely as a broker, and not a seller, of the unregistered stock.

The state trial court concluded that Smith could not be liable under section 292.480(1) because Commonwealth was not a "seller," finding that "a stock broker who merely executes a trade and has no other interest in the stock other than his commission is not a 'seller' as that section is used in [Kentucky Revised Statutes] 292.480(1)."

The state court also found that Smith was being sued under section 292.480(2) as a "person who directly or indirectly controls a seller." The court determined that Smith could not be liable unless he controlled Commonwealth and Commonwealth was a seller. Because the court resolved that Commonwealth was not a seller, the court necessarily concluded that Smith could not be liable.

The state court then considered whether Smith (but not Commonwealth) could be liable under section 292.480(2) as one who materially aided the sale. The court interpreted Excel to argue that anyone who executed a trade, such as Smith, would be a seller. The court recognized that the statute identifies a broker-dealer as a "non-seller," and, because it interpreted Excel to argue that Smith was a seller, consequently dismissed Excel's argument against him for broker-dealer liability. Based on its findings, the court granted the summary judgment motion. Excel appealed the ruling to the Kentucky Court of Appeals and, following that court's dismissal, to the Kentucky Supreme Court.

In the meantime, Smith and Commonwealth's Chapter 7 Trustee filed a joint motion for summary judgment in the bankruptcy court requesting disallowance of Excel's Proof of Claim on the basis of collateral estoppel. The bankruptcy court determined that the issue before it—"whether Commonwealth was a 'seller' of unregistered security for purposes of Kentucky Blue Sky Law"—was resolved in the state court action and, therefore, the issue was subject to collateral estoppel. The bankruptcy court found that all elements of collateral estoppel were met, with the exception of the finality of the state court action. It deferred granting summary judgment until the Kentucky Supreme Court ruled on Excel's appeal, and issued an order holding its ruling in abeyance.

Subsequently, the Kentucky Supreme Court affirmed the dismissal of Excel's appeal, and denied Excel's subsequent for rehearing. The bankruptcy court then entered the order granting summary judgment in favor of Commonwealth.

Excel filed a motion to alter, amend, or vacate the order, arguing that the doctrine of collateral estoppel did not apply to Excel's claim against Commonwealth for seller liability, and that there was still the outstanding issue as to Commonwealth's broker-dealer liability. In denying the motion, the bankruptcy court held that the issue of seller liability was collaterally estopped and that Excel had never raised a claim of broker-dealer liability against Commonwealth.

Excel appealed the bankruptcy court's decision to the district court, claiming that 1) the bankruptcy court erred in applying the doctrine of collateral estoppel on the issue of Commonwealth's seller liability, 2) the bankruptcy court erred in failing to read the broker-dealer claim for liability, under section 292.480(2), into its state court pleadings, and 3) Smith was judicially estopped from raising the collateral estoppel defense. The district court denied each claim, and Excel timely appealed.

II.

We directly review the decision of the bankruptcy court, *In re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734, 737 (6th Cir. 1994), reviewing de novo its conclusions of law and reviewing its findings of fact for clear error, *In re Kennedy*, 249 F.3d 576, 579 (6th Cir. 2001).

1.     Collateral Estoppel—Seller Liability

The bankruptcy court found that the issue before it—whether Commonwealth was a seller of securities under Kentucky Blue Sky Law—was resolved by the state court and granted summary judgment in favor of Commonwealth pursuant to the doctrine of collateral estoppel. Excel argues against application of the doctrine.

"The doctrine of collateral estoppel dictates that once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case." *N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987). The parties agree that this issue is governed by the four factors set forth in *National Labor Relations Board v. Kentucky May Coal Company*, 89 F.3d 1235, 1239 (6th Cir. 1996). The district court engaged in a thorough analysis of the application of collateral estoppel under the four factors, and, as to the issue of seller liability, we adopt its reasoning and conclusion.

2.     Broker-dealer Liability

Excel argues that its complaint also alleges a claim of broker-dealer liability, under section 292.480(2), against Commonwealth, and that the district court erred in failing to read this claim into the pleadings. We conclude that, even when we view these pleadings in the most forgiving light, we have no choice other than to affirm the district court's reading of the complaint.

A plaintiff must set forth pleadings that contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Even under our liberal pleading standards, a plaintiff must at least "give the defendant fair notice of what [the] claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47 (1957), by providing "either direct or inferential allegations respecting all the material elements to sustain a recovery." *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988).

Excel's pleadings do not satisfy even the liberal standard. The pleadings fail to allege any facts or state any law to indicate that it was pleading a broker-dealer theory of liability. The theory holds liable "every broker-dealer or agent who materially aids in the sale" of a security. Ky. Rev. Stat. § 292.480(2). Excel's pleadings do not set forth any allegations, directly or by inference, suggesting that Commonwealth materially aided any sale. Even if we read the pleadings in the most forgiving light, we find no claim of broker-dealer liability.

3.     Judicial Estoppel

Under the doctrine of judicial estoppel, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citations omitted). Excel argues that Smith should be judicially estopped from raising the collateral estoppel issue because, in a 1998 objection to Excel's motion for a protective order, Smith took the position that the area of inquiry—seller liability—had not been previously litigated.

There is no set formula for assessing when judicial estoppel should apply. *Id.* at 750. However, several considerations inform whether the doctrine is appropriate in a particular case. First, "a party's later

position must be 'clearly inconsistent' with its earlier position." *Id.* Second, a court should review "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *Id.* (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)). Finally, the court should evaluate whether the party advancing an inconsistent position would gain an unfair advantage if allowed to proceed with the argument. *Id.* at 751.

As to the first factor, the bankruptcy court concluded that judicial estoppel did not apply because the court was "not bound by the state court's discovery rulings." Another bankruptcy judge reviewed this claim in Excel's later motion to amend, alter, or vacate the judgment, determining that Smith's positions were not inconsistent on the two occasions. The district court found the judicial estoppel argument to be without merit because it did not find Smith's arguments to be inconsistent.

We agree that Smith's arguments are not inconsistent. In his motion opposing the protective order, Smith argued that there "was no final resolution regarding the Debtor." Indeed, state court action against Commonwealth was stayed pending resolution in bankruptcy. In his motion for summary judgment, Smith argued that collateral estoppel bars Excel from relitigating the issue of whether Commonwealth was subject to seller liability. These arguments are not inconsistent: even though litigation against Commonwealth was unresolved pending the stay, collateral estoppel would continue to bar any court from considering whether Commonwealth was a seller.

Also, there was minimal risk that the bankruptcy court was misled or that there would be a perception that it was misled. As discussed above, Smith's arguments were not inconsistent. Moreover, they were true; thus, there is little concern here that Smith was playing "fast and loose" with the facts of the case in order to mislead the court or Excel. *See Reynolds v. Comm'r of Internal Revenue Serv.*, 861 F.2d 469, 472 (6th Cir. 1988) (citing *Scarino v. Central R.R.*, 203 F.3d 510, 513 (3d Cir. 1953)) (observing that judicial estoppel is a rule against "playing fast and loose with the courts").

Based on this three-factor analysis, we conclude that the bankruptcy court did not err in refusing to apply the doctrine of judicial estoppel.

III.

For the foregoing reasons, we affirm the judgment of the district court.