**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0780n.06

**No. 12-2038**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Aug 23, 2013

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SHAUN BONKOWSKI, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellant, | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| v. | ) | MICHIGAN |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| An Illinois Insurance Company, | ) | OPINION |
| | ) | |
| Defendant-Appellee. | ) | |

Before: MOORE and GRIFFIN, Circuit Judges; and SARGUS, District Judge.[*]

**SARGUS, District Judge.** This case arose from Plaintiff-Appellant Shaun Bonkowski's

claim for insurance benefits under Michigan's No-Fault Insurance Act, Mich. Comp. Laws §

500.3101 *et seq.*, which entitles him to, *inter alia*, the cost of attendant care provided to him by his

father, Andrew Bonkowski. From 2001 through the filing of this action in 2008, Defendant-

Appellee Allstate Insurance Company ("Allstate") compensated Appellant's father at $166,440.00

per year for the attendant care of Appellant, who was rendered a quadriplegic in 2001. In this action,

Appellant seeks additional attendant care benefits. The district court denied Appellant's motion for

summary judgment and the case proceeded to trial to determine the reasonable pay due to Mr.

Bonkowski. The jury returned a verdict in favor of Allstate, finding that no additional amount was

due Mr. Bonkowski. After the trial, the district court denied Appellant's renewed motion for

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District
of Ohio, sitting by designation.

judgment as a matter of law, in which he argued that there was insufficient evidence to support the jury verdict. In the same post-trial motion, Appellant moved for a new trial based on the district court's denial of his request to present a certain jury instruction proposed by Appellant and a particular evidentiary ruling made by the district court. Appellant now appeals the district court's denials of these motions. For the reasons that follow, we **AFFIRM** the district court's decisions.

## I.

### A. Facts

On June 3, 2001, while walking home, Appellant was struck by a motor vehicle whose unknown driver fled the scene. Appellant was found in the early morning hours of June 4, 2001, in the ditch of his front lawn after having remained outside, unconscious, in forty to fifty degree weather. He was life-flighted to the hospital, where he remained for more than two months, undergoing multiple surgeries to his legs and cervical spine. He was eighteen years old at the time of the accident.

On August 14, 2001, Appellant was transferred to Craig Hospital in Denver, Colorado, a premier center for specialty rehabilitation and research for spinal cord and traumatic brain injuries. On August 8, 2001, Dr. Mark P. Cilo of Craig Hospital described Appellant's remaining medical issues to include a spinal cord injury with quadriplegia; traumatic brain injury complicated by prolonged hypothermia and probably hypoxia with retrograde amnesia of less than twenty-four hours; loss of consciousness of approximately two days and posttraumatic amnesia of several weeks; a history of subdural hematoma; respiratory failure requiring ventilator support; prolonged hypothermia requiring cardiopulmonary bypass for rewarming; bilateral tibial fractures requiring

post intramedullary nailing; a neurogenic bladder requiring an urethral catheter; a neurogenic bowel; a percutaneous gastrostomy tube in place for feedings; malnutrition due to poor intake and poor tolerance of tube feedings; recurrent fevers and pneumonias, with multiple antibiotics provided; contractures in both upper extremities; anxiety and depression; and severe pain due to his multiple problems, particularly contractures.

Craig Hospital educated and trained Mr. Bonkowski to provide for his son's care. Examples include providing daily manual bowel evacuation (an invasive treatment requiring knowledge of body handling and positioning), bladder care, medication assistance, and transfer assistance. Since Appellant's discharge from Craig Hospital on December 1, 2001, he maintains that his father has cared for him twenty-four hours a day, seven days a week, in accordance with the training and the prescriptions of his physicians. Allstate compensated Mr. Bonkowski at $166,440.00 per year for the attendant care, which is equivalent to an hourly rate of $19.00, for twenty-four hours a day, seven days a week.

### B. Michigan's No-Fault Insurance Act

Allstate is the first party no-fault insurer of Appellant. Michigan's No-Fault Insurance Act, Mich. Comp. Laws § 500.3101 *et seq.*, abolished third party tort liability for certain economic damages arising out of a motor vehicle accident and provided a substitute via private insurance. These economic damages include wage loss below the statutory limit, medical costs, and other allowable expenses, including "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation," collectively known as Personal Injury Protection benefits. *See* Mich. Comp. Laws §§ 500.3107-.3110; *In re*

*Felski*, 277 B.R. 732, 733 34 (E.D. Mich. 2002). The Michigan state courts have also approved

no-fault compensation for care provided by family members of the injured individual. *Booth v.*

*Auto-Owners Ins. Co.*, 224 Mich. App. 724, 727 29 (1997) (citations omitted).

Three requirements must be satisfied to hold a no-fault insurer responsible for benefits for

care provided by a family member: (1) the expense must have been incurred, (2) the expense must

have been reasonably necessary for the injured person's care, recovery, or rehabilitation, and (3) the

amount of the expense must be reasonable. *Nasser v. Auto Club Ins. Ass'n*, 435 Mich. 33, 50 (1990).

The burden is on a plaintiff to prove that the expenses were reasonable under the circumstances. *Id.*

at 49.

## C. State Court Litigation

Litigation between Allstate and the Bonkowskis began in state court on October 4, 2001

("*Bonkowski I*"), and addressed Appellant's expenses incurred from the time he was at Craig

Hospital. That case was heard by a jury, which rendered its verdict on July 7, 2006. On the question

of the value of the attendant care provided by Mr. Bonkowski the jury was asked: "What is the

amount of allowable expenses owed to the plaintiff (include only expenses not already paid by the

defendant)?" The jury responded: $1,381,114.00.

Allstate filed an appeal, in which it argued that the there was insufficient evidence upon

which a jury could have based its verdict. The Michigan Court of Appeals disagreed, explaining:

> The only legally relevant question presented to the jury was whether the
> compensation [Allstate] paid to Andrew was reasonable. The record contains
> sufficient evidence to conclude that the jury rejected [Allstate's] position.
> Substantial evidence was introduced chronicling Andrew's everyday care of [the]
> plaintiff. Not only did Andrew provide care consistent with that of a licensed health

> care professional, but ample evidence was presented to support the conclusion that Andrew's care was more conducive to [the] plaintiff's care, recovery, or rehabilitation than care that could have been provided by a licensed health care professional. The evidence established that Andrew provided plaintiff care that nurses ordinarily do not provide, including treatment specific to paraplegic patients.
>
> "[T]he trier of fact will ultimately determine whether a charge is reasonable." *Advocacy Organization for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 379 (2003), citing *Nasser v. Auto Club Ins. Ass'n*, 435 Mich 33, 55 (1990). The litigants zealously argued their respective cases to the jury. Although the verdict itself is large, there is nonetheless evidence to support the jury's determination that the compensation provided to Andrew by [Allstate] was not adequate, given Andrew's training received at the Craig and the actual attendant care Andrew provided to [the] plaintiff. The evidence was sufficient for reasonable jurors to conclude that the reasonable compensation due Andrew was substantially more than the compensation paid by [Allstate]. Thus, the jury verdict must stand.

*Bonkowski v. Allstate Ins. Co.*, 281 Mich. App. 154, 169 (2008) (parallel citations omitted).

Appellant contends that the lump sum verdict reflects attendant care pay of $468,660.00 per year, which is an hourly rate of $53.50, for twenty-four hours a day, seven days a week. Allstate, however, posits that it is mere speculation to consider that the jury awarded this hourly rate and that it is more likely that the jury awarded a higher hourly or yearly rate for the care related to the acute phase of Appellant's recovery and lowered the amount as Appellant's condition improved and Mr. Bonkowski's care became less necessary and of a lesser intensity. Allstate has continued to pay Mr. Bonkowski $166,440.00 per year since the *Bonkowski I* jury verdict.

## II.

In the district court, Appellant moved for summary judgment on the issue of the attendant care benefits, asserting that Allstate was collaterally and/or judicially estopped from arguing that the reasonable value was any amount less than $53.50 per hour, for twenty-four hours a day, seven days

No. 12-2038
*Bonkowski v. Allstate Insurance Co.*

a week. The district court denied the motion, finding that Appellant's condition and needs were different than they were in *Bonkowski I*.

**A. Standard of Review**

This Court's review of the district court's denial of summary judgment is for abuse of discretion unless the denial is based on purely legal grounds, in which case review is *de novo*. *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004). We have repeatedly held that judicial and collateral estoppel are reviewed under a *de novo* standard of review.[1] *See, e.g.*, *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (judicial estoppel); *Stemler v. Florence*, 350 F.3d 578, 585 (6th Cir. 2003) (collateral estoppel). In general, "'where summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed.'" *United States ex rel. A+ Homecare, Inc., v. Medshares Mgmt. Grp., Inc.*, 400 F.3d 428, 441 (6th Cir. 2005) (quoting *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990)). However, there is an exception to this rule when "the denial of summary judgment was based on a question of law rather than the presence of material disputed facts." *Id.* Here, Bonkowski's challenges on appeal to the district court's denial of summary judgment concern the application of judicial and collateral estoppel. The availability of judicial estoppel is a question of law. *Allen v. UNUM Life Ins. Co. of Am.*, 142 F. App'x 907, 910 (6th Cir. 2005). Although "the availability of collateral estoppel is a mixed question of law and fact," *Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005) (internal quotation marks and alteration omitted), mixed questions "are treated as legal

---

[1]The vast majority of these cases are appeals of a district court's grant of summary judgment based on either of these two doctrines. Both parties ask us to apply a *de novo* standard of review.

6

questions for purposes of our review," *Vakilian v. Shaw*, 335 F.3d 509, 515 (6th Cir. 2003). Accordingly, we will review Bonkowski's challenges on appeal to the district court's denial of summary judgment.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). A genuine issue of material fact exists "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 248). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts").

## B. Judicial Estoppel

"Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. Nat'l Labor Relations Board*, 911 F.2d 1214, 1217-18 (6th Cir. 1990). "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially

if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'"

*Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). Thus, the doctrine "bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Id.* (citing *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002); *Teledyne*, 911 F.2d at 1218) (internal quotations omitted).

"A court should also consider whether the party has gained an unfair advantage from the court's adoption of its earlier inconsistent statement." *Id.* (citing *New Hampshire*, 532 U.S. at 751). "Although there is no set formula for assessing when judicial estoppel should apply, it is well-established that at a minimum, a party's later position must be clearly inconsistent with its earlier position." *Id.* (citing *In re Commonwealth Institutional Sec.*, 394 F.3d 401, 406 (6th Cir. 2005); *New Hampshire*, 532 U.S. at 750) (internal quotation marks omitted). "Moreover, the doctrine of judicial estoppel 'is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement.'" *Id.* (quoting *Teledyne*, 911 F.2d at 1218).

Appellant contends that when Allstate was before the state appellate court, it took the position that $53.50 per hour is the reasonable rate of pay for attendant care provided by Mr. Bonkowski. That position, Appellant continues, is inconsistent with Allstate's current posture that $19.00 per hour is the reasonable rate of pay. Further, he maintains that the state appellate court

accepted Allstate's position. Appellant's assessment of the proceedings before the state appellate court, however, is inaccurate.

Contrary to Appellant's contention, Allstate did not assert to the state appellate court that the reasonable rate of pay for the attendant care provided by Mr. Bonkowski is $53.50 per hour. Allstate clearly articulated its position before the state appellate court as follows: "Allstate's position is that its ongoing payment on behalf of Shaun Bonkowski of $19.00 per hour, 24 hours per day, 365 days per year to Mr. Bonkowski was reasonable, and that Plaintiff failed to make a prima facie case showing otherwise." (Allstate's State Ct. Appellate Br. at 3, Dist. Ct. Docket at 22-7 at 1.) Allstate contended in state court that it was the jury, not Allstate, who set the value of the care as $53.50 per hour. At oral argument on Appellant's motion for summary judgment, the trial judge recognized this, as is shown by the following exchange:

> Counsel: . . . The position that [Allstate] made to the [state] Court of Appeals, to a court, was that the value of care as determined by the jury was $53.50 per hour, and it is on that basis that I'm claiming the judicial estoppel, because Allstate has set forth as being, that's their position.
>
> Court: What's [Allstate's] position, that that's what the jury decided?
>
> Counsel: Yes.
>
> Court: Yeah, but [Allstate] didn't agree with it.
>
> Counsel: I agree with that, they didn't agree with it . . . .

(Oral Hearing Tr. on Pl. Mot. for Summ. J. at 9; Dist. Ct. Docket No. 101.) Counsel continued, attempting to explain how the position could be understood to be one taken by Allstate:

> Counsel: . . . this language from the Court from *Teledyne* at 911 F.2d 1214, "We do not imply that judicial acceptance only occurs where a party ultimately prevails on

9

> the merits. Rather, judicial acceptance means only that the first court has adopted the position urged by the party either as a preliminary matter or as a part of a final disposition." In other words, it's not necessarily that Allstate agrees that the reasonable value of the care is 53.50. . . . But they had advised the [state appellate court], in advancing their position, that that was the determination, the adjudication in the lower court. Whether they agree with that or not, they certainly agree that that is what the jury determined in the lower court.

*Id.* at 9 10.

Counsel, however, misapprehends the nature of the inquiry required by the doctrine of judicial estoppel. Simply because Allstate indicated to the state appellate court that the jury verdict, with which it did not agree, could be expressed in terms of a consistent hourly rate of $53.50 does not mean that it adopted that position. (Allstate's State Ct. Appellate Br. at 16, Dist. Ct. Docket at 22-7 at 4) ("the verdict reflects an attendant care benefit award *equivalent to* $53.50 per hour") (emphasis added). Nowhere in the record before us has Allstate "urged" any court to accept the position that $53.50 is a reasonable rate of pay for attendant care services provided by Mr. Bonkowski. Indeed, the record reflects that the opposite has been consistently expressed by Allstate. That is, that $53.50 is an unreasonable rate of pay for the attendant care services provided by Mr. Bonkowski.

Additionally, the Court notes that in the present case there is neither evidence of gamesmanship that the doctrine of judicial estoppel is intended to prevent, nor that Allstate gained an unfair advantage from suggesting that the jury's verdict could be expressed as $53.50 per hour. Consequently, the Court concludes that the district court correctly found that Appellant is not entitled to the application of judicial estoppel on this issue.

## C. Collateral Estoppel

"The Full Faith and Credit Act mandates that 'judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Trust Dated June 27, 2002*, 410 F.3d 304, 310 (6th Cir. 2005) (quoting 28 U.S.C. § 1738) (omissions in original). "The United States Supreme Court has interpreted the act as requiring that 'a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Id.* (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Thus, the full faith and credit owed to the state court judgment is the same owed in federal court. To the extent the Michigan judgment is modifiable under state law because of changed conditions, the federal court in this instance had the same power to modify the judgment, at least insofar as future payments.

"Under Michigan law, issue preclusion, known as collateral estoppel, 'precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was . . . actually litigated, and . . . necessarily determined.'" *Id.* (quoting *People v. Gates*, 434 Mich. 146, 154 (1990), overruled in non-relevant part in *Monat v. State Farm Ins. Co.*, 469 Mich. 679 (2004)). "'The party asserting preclusion bears the burden of proof.'" *Id.* (quoting *United States v. Dominguez*, 359 F.3d 839, 842 (6th Cir. 2004)). Therefore, to establish collateral estoppel, Appellant must demonstrate that:

    1) the parties in both proceedings are the same or in privity,

    2) there was a valid, final judgment in the first proceeding,

    3) the same issue was actually litigated in the first proceeding,

    4) that issue was necessary to the judgment, and

    5) the party against whom preclusion is asserted (or its privy) had a full and fair opportunity to litigate the issue.

*Id.* (citing *United States v. Dominguez*, 359 F.3d 839, 842 (6th Cir. 2004)); *Gates*, 434 Mich. at 154  55).

In the instant action, Appellant contends that the issue of the value of attendant care provided to him by his father was actually litigated in the state court and was determined to be $53.50 per hour for every hour of the day, seven days a week, and that the determination was necessary to the judgment. The district court found that application of the preclusion doctrine was inappropriate because Appellant failed to show that the same issue was actually litigated in the first proceeding or that the issue was necessary to the judgment. We agree.

As to the requirement that the same issue be actually litigated, Appellant is correct that the jury made a determination of the value of care provided to Appellant by his father. That determination, however, was based on Appellant's medical needs and the intensity of care provided by Mr. Bonkowski at that time, *i.e.*, from the time of Appellant's stay at Craig Hospital in 2001 until the July 2006 jury verdict in *Bonkowski I*. Allstate offered evidence of changes in Appellant's medical condition and level of care provided by Mr. Bonkowski. As the district court correctly found:

12

> The difference between the issue in the prior case and the issue in this case has to do with the condition of the Plaintiff, the requirements that the Plaintiff demands in terms of attendant care, the level of skill that is required to meet those requirements, and the -- a reasonable rate for furnishing that level of skilled care under the circumstances as they exist from day to day beginning on July 7 of 2006 through the present date or the date of the determination.

(Oral Hearing Tr. at 23, Dist. Ct. Docket No. 101 at 23.)

Allstate provided evidence of changes and improvements in Appellant's medical condition, changes in his care needs, and changes in the care that was provided. For example, Appellant was no longer on a ventilator nor did he need a tracheotomy tube suctioned. Further, in February 2006, Appellant had undergone various treatments, including botox injections, which, combined with adaptive medical equipment (including a left arm brace), increased and improved his range of motion. Appellant was consequently able to engage in certain activities, including working on a computer while not in bed. In April 2006, Appellant received new durable medical equipment, including a new wheelchair, with better pressure points, which, *inter alia*, provided relief from the previous problems on his posterior shoulder. Also, his decubitis ulcer decreased in size. Appellant's medical treatments became less frequent, including three month periods where he had no physician appointments.

Further, Allstate set forth evidence that the level of care provided by Mr. Bonkowski had declined, including his use of incorrect shoes causing foot ulcers, shearing to Appellant's back resulting from transfer procedures, and the accidental fracturing of Appellant's femur while performing leg stretches. Finally, Allstate also pointed out that several medical conditions from Appellant's initial hospital stay, which were before the jury in *Bonkowski I*, were no longer issues,

such as a right segmental fibula fracture, a right distal third tibia fracture, a left mid-shaft tibia fracture, presumed cervical fractures, respiratory failure and requirement for ventilator support, the requirement for cardiopulmonary bypass or rewarming, the need for intramedullary nailing, percutaneous gastronomy tube, malnutrition, and chemical pancreatitis.

These changes over the six years that had elapsed since the jury verdict in *Bonkowski I* also distinguish this case from *Juzba v. State Farm Mut. Auto. Ins. Co.*, No. 283820, 2009 Mich. App. LEXIS 665 (Mich. Ct. App. Mar. 26, 2009), the case upon which Appellant most heavily relies in his collateral estoppel argument. The *Juzba* court applied collateral estoppel to prevent an insurer from relitigating the reasonableness and necessity of services provided by a rehabilitation facility. The trial judge in the first case determined prior to trial that the rate charged by the facility was reasonable, and a jury returned a verdict determining that the accommodations were reasonably necessary for the plaintiff's care of an injury that arose out of an accident that was covered. After the payment of that verdict, the insurer stopped paying for these services and the plaintiff filed a second suit, in which she moved for and was granted summary disposition.

*Juzba* is easily distinguished from this case because the insurer there provided no evidence at all that the plaintiff's condition or need for care changed from the time of the first verdict, as recognized by the state appellate court:

> Although the jury made no determination regarding the reasonableness and necessity of *future benefits*, plaintiff attached to her motion for summary disposition the affidavit of Dr. Terry Braciszewski, who averred that neither plaintiff's diagnosis nor her need for the services being provided by [the rehabilitation facility] had changed since the jury rendered its verdict in August 2006. Despite the passage of nearly 9 months between the times plaintiff filed this action and when she filed her motion for summary disposition, State Farm apparently failed to engage in discovery to support

14

> its position that the treatment being provided by [the rehabilitation facility] is no longer reasonable and necessary. State Farm failed to submit any documentary evidence with its reply to plaintiff's motion for summary disposition to contradict Dr. Braciszewski's averments in his affidavit. *Under these circumstances, where a jury previously determined the necessity and reasonableness of plaintiff's treatment, where plaintiff presented an affidavit to establish the continued necessity and reasonableness of the treatment, and where State Farm failed to present documentary evidence to contradict plaintiff's documentary evidence, the trial court properly granted summary disposition in favor of plaintiff* under MCR 2.116(C)(7).

*Juzba*, 2009 Mich. App. LEXIS 665, at *10 11 (emphasis added). Additionally, the court specifically indicated that the insurer "might have avoided summary disposition by submitting documentary evidence to contradict the documentary evidence in support of plaintiff's claim regarding the necessity and reasonableness of plaintiff's continued treatment at [the rehabilitation facility]." *Id.* at *11 n. 4. Here, that is exactly what Allstate did. It submitted evidence that contradicted Appellant's evidence on the issue of changes and improvements in Appellant's medical condition, changes in his care needs, and changes in the care that was provided.

We next address whether the issue presented in this case was necessary to the judgment of the state trial court. "An issue is necessarily determined only if it is 'essential' to the judgment." *Gates*, 434 Mich. at 158 (citation omitted). In the case *sub judice*, it cannot be said that a determination that the value of the services provided by Mr. Bonkowski was $53.50 per hour, to be paid for twenty-four hours a day, seven days a week was essential to the jury verdict. Indeed, it cannot be said that the jury even made that determination. The jury returned a lump sum verdict. It is mere speculation to conclude that the jury awarded that amount based upon a determination that Mr. Bonkowski should be paid a consistent hourly rate for every hour of each day of a six year period. Without the benefit of answers to interrogatories or special verdicts, it is not possible to

know if the jury reached such a conclusion. It is also not possible to know whether the jury found

the reasonable rate of pay was inconsistent over that time period, awarding a higher rate of pay for

the hours spent in the initial period after the accident, or during the more skilled or intrusive medical

procedures Mr. Bonkowski provides, or even during the daytime hours as opposed to the night.

Because Appellant failed to show that the same issue was actually litigated in the first

proceeding or that the issue was necessary to the judgment, the district court properly declined to

apply the doctrine of collateral estoppel.

## III.

After this case was tried to a jury, Appellant filed a renewed motion for judgment as a matter

of law pursuant to Rule 50 of the Federal Rules of Civil Procedure, which the district court denied.

### A. Standard of Review

In diversity cases, when a Rule 50 motion for judgment as a matter of law is based on a

challenge to the sufficiency of the evidence, this Court applies the standard of review used by the

courts of the state whose substantive law governs the action. *Morales v. American Honda Motor

Co.*, 151 F.3d 500, 506 (6th Cir. 1998). Under Michigan law, "[t]he standard of review for

judgments notwithstanding the verdict requires review of the evidence and all legitimate inferences

in the light most favorable to the nonmoving party." *Orzel by Orzel v. Scott Drug Co.*, 449 Mich.

550, 557 (1995).

> [An appellate] Court reviews a trial court's decision regarding a motion for a directed
> verdict to determine whether, viewing the evidence in the light most favorable to the
> nonmoving party, a question of fact for the jury existed. *Stoken v. J.E.T. Electronics
> & Technology, Inc.*, 174 Mich. App. 457, 463 (1988). The trial court's decision to
> grant or deny a motion for a directed verdict will not be disturbed on appeal unless

16

> the trial court abused its discretion. *Howard v. Canteen Corp.*, 192 Mich App 427, 431 (1992). Similarly, judgment notwithstanding the verdict is improper where the evidence is such that reasonable minds could differ. *Byrne v. Schneider's Iron & Metal, Inc.*, 190 Mich. App. 176, 179 (1991).

*Schutte v. Celotex Corp.*, 196 Mich. App. 135, 138 (1992) (parallel citations omitted).

## B. Discussion

Appellant argues that Allstate failed to provide any evidence on the issue of whether his condition and care needs had changed since the verdict in *Bonkowski I*, that "[t]he only evidence presented to the jury on this issue was by [Appellant]," and that evidence supported a lack of change. (Pl. Mot. for J. as a Matter of Law at 11, Dist. Ct. Docket No. 147 at 19.) Appellant, however, is incorrect.

As we have set forth *supra*, Allstate provided evidence of changes and improvements in Appellant's medical condition, changes in his care needs, and changes in the care that was provided. Allstate offered this same or similar evidence at trial and elicited additional testimony to support its position. For example, Dr. Perlman, the physician who prescribed the attendant care testified that the twenty-four-hour-care prescription was due in part to Appellant's tracheotomy and related care issues and that care could be scaled back once he was removed from the ventilator, which happened by the period of time at issue in this case. Another example is the testimony Allstate elicited from Mr. Bonkowski about improvement in Appellant's cognitive abilities and the discontinuation of Appellant's PIC-line, which is an IV that remains in the body for a long period of time and is cumbersome to care for.

Viewing this evidence, and the evidence discussed above in section II, in the light most favorable to Allstate, and drawing all reasonable inferences in its favor, we conclude that there is sufficient evidence in the record to support the jury verdict. Therefore, the district court did not abuse its discretion by denying Appellant's motion for a judgment notwithstanding the verdict.

**IV.**

In Appellant's post-trial motion, he requested judgment as a matter of law and/or a new trial based on, *inter alia*, the district court's denial of his request to present a certain jury instruction he proposed and based on the court's evidentiary ruling related to the purpose for which the jury could hear of the *Bonkowski I* jury verdict.[2] Appellant appeals the district court's rulings, which we review for an abuse of discretion. *United States v. Ross*, 502 F.3d 521, 527 (6th Cir. 2007) ("This Court reviews a district court's choice of jury instructions for abuse of discretion."); *United States v. Perry*, 438 F.3d 642, 647 (6th Cir. 2006) ("We review the district court's admission or exclusion of evidence for an abuse of discretion.").

**A. Jury Instructions**

Appellant raises as an issue on appeal whether the district court erred "in failing to instruct the jury on the issue of whether there was a significant change in Plaintiff's condition."[3] (Appellant

---

[2]Appellant raised issues as to the timing of the district court's ruling, as well as Allstate's counsel's alleged improper arguments made during the trial; however, Appellant has not raised these issues as assignments of error, nor has he made any legal argument related to these issues. It is, therefore, unnecessary to review the district court's decision related to these issues.

[3]Neither party cites to the instruction given by the district court. Therefore, we focus exclusively on the instruction which was not given.

Br. at 7.) Notwithstanding this statement, Appellant made no argument related to the legal basis for his contention in his brief and filed no reply to the arguments made by Allstate in its brief. At oral argument, however, Appellant's counsel candidly explained that while he did not address this issue in his brief, he relies upon *Manley v. DAIIE*, 425 Mich. 140, 388 N.W.2d 216 (1986), to support his argument. We address *Manley* below.

Initially, we consider the district court's decision related to whether appellant waived his right to object to the jury instruction given. In its decision, the district court held that Appellant waived his right to object because he did not make the objection before the jury was charged. Alternatively, the district court held that even if he had not waived the right to object, his objection lacks merit.

Federal Rule of Civil Procedure 51 governs jury instructions in federal court and requires that "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). The objection must be made "out of the jury's hearing before the instructions and arguments are delivered." Fed. R. Civ. P. 51(b)(2). The rule also states that "[a] party may assign as error . . . a failure to give an instruction, if that party properly requested it and     unless the court rejected the request in a definitive ruling on the record     also properly objected." Fed. R. Civ. P. 51(d)(1)(B).

The failure of a party to object in this manner is generally viewed as a waiver of the party's objection to the jury instruction. *See, e.g.*, *Clarksville-Montgomery Cnty. School Sys. v. U.S. Gypsum Co.*, 925 F.2d 993, 1006 (6th Cir. 1991) ("We first note that Clarksville's failure to object

19

to a specific charge before and after the jury charge is given constitutes waiver of the objection.'")

(citing *Murphy v. Owens-Ill., Inc.*, 779 F.2d 340, 345-46 (6th Cir. 1985)). Nonetheless, "[a]lthough

the language of Rule 51 suggests that litigants must timely 'use it or lose it,' a litigant's failure to

object to a jury instruction does not create a jurisdictional bar to review." *Reynolds v. Green*, 184

F.3d 589, 594 (6th Cir. 1999) (citing *City of Springfield v. Kibbe*, 480 U.S. 257, 259 (1987)). In this

regard, Rule 51 allows consideration of an unpreserved jury instruction argument under a plain error

standard if the "error in a jury instruction is obvious and prejudicial." *Sovereign Order of Saint John*

*of Jerusalem, Inc. v. Grady*, 119 F.3d 1236, 1243 (6th Cir. 1997) (citing *Chonich v. Wayne Cnty.*

*Cmty. Coll.*, 973 F.2d 1271, 1275 (6th Cir. 1992)); Fed. R. Civ. P. 51(d)(2); *Young v. Langley*, 793

F.2d 792, 795 (6th Cir. 1986). However, a jury instruction error that is harmless will not furnish a

basis for relief. *Johnson Controls, Inc. v. Jay Indus., Inc.*, 459 F.3d 717, 727 (6th Cir. 2006).

Appellant makes no argument that the district court's refusal to instruct the jury on his

proposed instruction is plain error and we find no plain error here. The jury instruction offered by

Appellant is as follows:

> Defendant Allstate Insurance Company has the burden of proof on its defense that there has been a substantial change in the facts and circumstances in Shaun Bonkowski's need for attendant care.

> You are instructed that the reasonable value of the attendant care services provided by Andrew Bonkowski for Plaintiff Shaun Bonkowski has been determined in the past to be $2,140,810.00 for 1,666 days of attendant care service. Defendant has the burden of proving the following:

> (a) That there has been a substantial change in the facts and circumstances in Shaun Bonkowski's need for attendant care services since July 7, 2006 and

> (b) if there has been a substantial change in the facts and circumstances in Shaun Bonkowski's need for attendant care services since July 7, 2006, the change in the reasonable value of the care.

(Dist. Ct. Op. at 14.)

Appellant relies on *Manley v. DAIIE*, 425 Mich. 140, 388 N.W.2d 216 (1986), for the proposition that the jury must find that the reasonable value of care is what the *Bonkowski I* jury determined it to be unless Allstate proves that there was a significant change in Appellant's condition. The district court correctly explained why this case does not support Appellant's position:

> *Manley* certainly discussed the idea that injured persons and insurance companies "are entitled to a redetermination from time to time of the amounts properly allowable for nurse's aides or for room and board, including the services of the [family members]." *Id.* at 158, 388 N.W.2d at 224. However, the portions of *Manley* that discuss review for change in circumstances, which the plaintiff cited in his brief, do not address which party has the burden of proof on that issue. The proposed instruction assigns the burden to the defendant without any legal support for that proposition. The plaintiff pointed to none and the Court did not locate any.

(Dist. Ct. Op. at 15.) For these same reasons, this Court finds no obvious and prejudicial error in the district court's refusal to give Appellant's proposed instruction.

## B. Evidentiary Ruling

Two weeks before trial, the district court ruled on, *inter alia*, Appellant's motion *in limine*. The district court granted Appellant's request to allow the jury to be presented with the *Bonkowski I* jury verdict as evidence of the value of the attendant care in this case. Allstate moved for reconsideration, and on the morning of jury selection, the district court heard additional arguments on the subject and altered its *in limine* ruling. The district court decided that it would be misleading and confusing for the jury to hear the *Bonkowski I* jury verdict as substantive evidence on the

reasonableness of Appellant's requested $53.50 per hour attendant care pay. The district court indicated that it would permit the *Bonkowski I* jury verdict to be discussed before the jury only for the purpose of determining whether the amount to be paid to Mr. Bonkowski for his attendant care services was reasonably in dispute after that verdict. If it were reasonably in dispute, then Allstate would not be overdue in its attendant care payments since the *Bonkowski I* verdict and would not be required to pay interest on the amount ultimately due if the jury in this case found in favor of Appellant.

During opening statements, Appellant's attorney offered the following:

Now, when I say that the care has been valued, well, here's a critical time period that it is very important, not necessarily specifically to this case, but in understanding how the care has already been valued, and why, when I said at the beginning of this opening statement, I really wasn't too thrilled about having to be here again.

December 8, 2001, when Shaun was discharged from the hospital, through July 7, 2006, is 1,666 days. Allstate paid $2.1 million for that care that was provided. It's been valued.

Now, how can we break that down into something that was a little bit more -- well, a little bit easier to understand? If you do the math, as the evidence will show in this case, this works out to $53.54 per hour. That's what Allstate paid. That's how Allstate valued it for that time period. We went through a trial, and after the trial, that's what was paid.

. . . .

The care has been valued. The determination has been made.

So what are we doing now? Well, I think one way that I can try and show this to you is through a time line and the events, some of the significant events.

You see, from December 8 of 2001 to July 7 of 2006, it's that 1,666 days. And the valuation of that care is at $53 an hour. What is the dispute in this case? This case begins on July 8 of [2006]. That's our dispute. July 8, 2006 to today.

No. 12-2038
*Bonkowski v. Allstate Insurance Co.*

(Trial Tr. at 32  33, Dist. Ct. Docket No. 151 at 32  33.)

The *Bonkowski I* jury verdict was discussed several times during the trial, and at one point

the district court informed the jury of its evidentiary ruling:

> THE COURT:  Members of the jury, let me discuss the evidence with you and the purpose for which you may consider this evidence.
>
> The period for which attendant care is claimed in this case, as I explained to you earlier, was from July 7 of 2006 through the current date.
>
> There was a claim for attendant care, as you have heard from the evidence, on an earlier time, for an earlier period, which I believe the proofs have shown was December 18, 2001, through July 7, 2006.  That claim was in dispute and it was resolved in a different lawsuit.
>
> The result of that lawsuit is something that you may not take into account in determining the value of the attendant care for this period, however, there is another issue involved in the case, and that is whether or not the amounts were overdue after July 7.
>
> And so the question is whether -- on whether the amounts were overdue is whether the Defendant can claim that the matter was reasonably in dispute.  And you may consider the issue of the prior court determination on the question of whether the matter was previously in -- whether the matter was reasonably in dispute for the period after July 7, 2006, that is what we're here to talk about today, but not in terms of setting a value.  The value for the attendant care is what you determine it to be based upon the evidence and my instructions.
>
> The Plaintiff has the burden to prove that the value of attendant care for reimbursement is what it is, and I will be instructing you that the Plaintiff must prove that the expense was incurred, was necessary, and that the amount is reasonable.  And that's for you to decide based upon the evidence that you have before you.
>
> Now, when I instruct you that the evidence that you are hearing may be used for a limited purpose, you may consider it only for that purpose and for no other purpose. So the evidence of the prior -- the results of the prior proceeding, you may consider on the question of whether the Defendant has a claim that the amount is reasonably in dispute, but you may not consider it for the purpose of the actual value of the attendant care that you will determine in this case.

23

(Trial Tr. at 552 54, Dist. Ct. Docket No. 152 at 68 70.)

As the district court correctly indicated in its decision below, "[e]vidence is properly excluded when it poses a 'likelihood of misleading the jury and confusing the issue.'" *Blakely v. City of Clarksville*, 244 F. App'x 681, 683 84 (6th Cir. 2007) (quoting *Olin-Mathieson Chem. Corp. v. Allis-Chalmers Mfg. Co.*, 438 F.2d 833, 837-38 (6th Cir. 1971)). "Evidence of a prior verdict is likely to mislead the jury because '[a] jury is likely to give a prior verdict against the same defendant more weight than it warrants. Admission of a prior verdict creates the possibility that the jury will defer to the earlier result and thus will, effectively, decide a case on evidence not before it.'" *Id.* at 684 (quoting *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975)). "In essence, the jury may 'import the whole verdict . . . from the prior proceeding.'" *Id.* (quoting *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1010 (9th Cir. 2007)).

Consequenlty, the district court did not abuse its discretion in excluding the *Bonkowski I* verdict as substantive evidence on the value of Mr. Bonkowski's attendant care and directing that evidence only toward the question whether Allstate's attendant care payments were overdue. That question, as it turned out, the jury was not required to reach because Appellant failed to persuade it that the value of the attendant care furnished by Mr. Bonkowski exceeded what he had already been paid.

**V.**

For the reasons stated above, we **AFFIRM** the district court's decisions.