NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0477n.06

No. 12-1778

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*May 13, 2013*
DEBORAH S. HUNT, Clerk

LEAH ALLYN NORTON,                                        )
                                                         )       ON APPEAL FROM THE
      *Plaintiff-Appellee*,                               )       UNITED STATES DISTRICT
                                                         )       COURT FOR THE WESTERN
v.                                                       )       DISTRICT OF MICHIGAN
                                                         )
HEATHER STILLE, in her individual capacity,              )       **O P I N I O N**
                                                         )
      *Defendant-Appellant*.                              )

BEFORE:     KEITH, COLE and ROGERS, Circuit Judges.

COLE, Circuit Judge.  This case comes to us on interlocutory appeal from a district court's denial of Defendant-Appellant Sheriff Deputy Heather Stille's motion requesting summary judgment.  Plaintiff-Appellee Leah Norton brought a § 1983 suit against Stille alleging that Stille used excessive force when booking Norton into federal district court lock-up.  The district court held that, taking the facts in the light most favorable to Norton, Stille was not entitled to summary judgment on qualified immunity.  We affirm.

I.

The facts in this case, although caught on audio-less video tape, are still highly disputed. They are presented below in the light most favorable to Norton, the non-moving party, as assumed by the district court for purposes of the summary judgment motion.  *See Sabo v. City of Mentor*, 657 F.3d 332, 336 (6th Cir. 2011) (holding that on interlocutory appeals for summary judgment on the

grounds of qualified immunity this court has jurisdiction over only legal issues and must adopt the district court's version of the facts).

On October 12, 2010, the day of the incident, Norton was a fifty-eight-year-old woman with bipolar disorder and a history of panic attacks. She stood five-feet four-inches tall, weighed 130 pounds, and used a four-wheel handicap scooter for mobility due to a recent surgery on her right foot. She also wore a boot on her injured foot. Stille was five-feet two-inches tall and weighed 105 pounds at the time of the incident.

Norton—unaware of the jury selection date and time—was fined $150 for not being present to pick a jury in a misdemeanor trespass case against her. She did not have $150 with her and was therefore remanded into custody for contempt of court until her husband could provide the funds. Unnerved, she began to devolve into a panic attack when placed into custody.

Norton was escorted by a bailiff to the booking area where Stille was on duty. There, according to Norton, she asked for a minute to compose herself due to her anxiety and panic. Stille asked her to remove her jewelry, and Norton complied. Norton then said she needed to blow her nose and picked up a roll of toilet tissue from the booking desk. Stille said "I'll tell you when you can use a tissue," and took the tissue out of Norton's hand. Norton, while still suffering from the panic attack, then picked up a paper towel to blow her nose as well as a bottle of soda, stating that she needed something to drink. At that point, Stille grabbed Norton's arm in order to get her to drop the soda bottle. Stille and Norton struggled over the bottle for a few seconds, until it dropped to the floor. According to Norton, and as found by the district court, the bottle was never raised into a position that was "even remotely threatening to the officer."

After the bottle had fallen to the floor, and any conceivable threat to Stille had dissipated, Stille pulled Norton's left arm behind her back, swinging Norton off her scooter, pushing the scooter against the wall and breaking Norton's arm. Norton informed Stille that her arm was broken and Stille responded, "Yes, I know." According to Norton the break was audible. Norton was pinned against the wall and unstable at this point. Stille then proceeded to use a takedown technique so that Norton ended up facedown on the floor. Norton's arm was broken another time during the takedown. Norton then passed out from the pain. Norton's arm was broken in three separate places as a result of the encounter and she remains permanently disabled.

On October 11, 2011, Norton filed suit against Stille in the United States District Court for the Western District of Michigan under 42 U.S.C. § 1983 and Michigan common law, seeking damages for excessive force and assault and battery. Stille filed a motion for summary judgment arguing that Norton's suit is barred by the *Heck* bar—a doctrine that prohibits federal lawsuits which assert a theory inconsistent with existing criminal judgments—and asserting qualified immunity. *See Heck v. Humphrey*, 512 U.S. 477 (1994). The district court denied the motion in an oral opinion on May 30, 2012, holding that Stille was not entitled to qualified immunity and that the *Heck* doctrine did not apply.

Stille filed a timely appeal. We address these claims in turn.

## II.

Qualified immunity protects government officials from liability for discretionary functions performed in the course of duty so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harris v. City*

*of Circleville*, 583 F.3d 356, 364-65 (6th Cir. 2009)  The district court held that Stille was not entitled to qualified immunity with regard to Norton's claims because Norton's constitutional right to be free from excessive force was clearly established at the time of the incident and a reasonable jury could find that Stille violated that right.

This Court has jurisdiction under 28 U.S.C. § 1291 to hear appeals only from "final decisions" of the district court.  "A district court's denial of qualified immunity is a final decision for purposes of § 1291 only to the extent that it turns on an issue of law." *Harris*, 583 F.3d at 364 (citation omitted).  "[I]nterlocutory jurisdiction is conferred only where the defendant's appeal involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law." *Bomar v. City of Pontiac*, 643 F.3d 458, 461 (6th Cir. 2011)(internal quotations and citation omitted).  "[W]e lack jurisdiction to consider a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Sabo*, 657 F.3d. at 336 (citations and internal quotations omitted).  As far as Stille has challenged Norton's version of the facts, we are without jurisdiction. *See id*.  "That the Defendant[] here make[s] the occasional factual argument does not, however, destroy jurisdiction over the legal issues presented." *Harris*, 538 F.3d at 364.  This Court therefore considers only the legal question of whether the facts adopted by the district court constitute a violation of clearly established law, ignoring any attempt by Stille to dispute the version of the facts adopted by the district court.  We review this question *de novo*. *Id*.

In assessing a claim for qualified immunity we engage in a two-step analysis:  First, taking into account the totality of the circumstances, we determine if "the facts alleged show the officer's

conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If so, we determine whether the right in question was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier*, 533 U.S. at 201).

### A.

A claim for excessive force during a seizure or booking arises under the Fourth Amendment and its objective reasonableness standard. *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). In deciding if an officer's use of force was reasonable under the Fourth Amendment, we balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Proper application of the reasonableness test requires attention to particular aspects of each individual case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Our analysis contains built-in deference to officers' frequent need to make split-second decisions. *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). In making the reasonableness determination, a court should consider the totality of the circumstances. *Graham*, 490 U.S. at 396.

Taking the district court's version of the facts, Stille's use of force was unreasonable and a violation of Norton's Fourth Amendment rights. All of the *Graham* factors—severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether she

is actively resisting arrest or attempting to evade arrest by flight—favor a finding of excessive force. *Graham*, 490 U.S. at 396. First, Norton's crime was not particularly serious. *See id*. She was being booked for failure to pay a $150 contempt of court fine because she did not show up for jury selection on a misdemeanor charge. *See Harris*, 583 F.3d at 366 (finding that non-violent crimes are not particularly serious in the *Graham* analysis).

Second, Norton never posed any real threat to Stille. *See Graham*, 490 U.S. at 396. Norton was a handicapped fifty-eight-year-old woman constrained by a motorized scooter. Although she displayed some passive resistance—she grabbed the paper towel and the soft drink knowing Stille had not given her permission for these actions—the bottle was never placed in a position that Stille could have reasonably interpreted as threatening.

Stille, at most, was "justified only [using] the amount of force that a reasonable officer in the heat of the moment could have believed was needed to end [Norton]'s passive resistance." *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006). Stille's use of force far exceeded this standard. During the takedown, Norton's arm was broken twice in three separate places. The first break did not occur until long after the bottle had already dropped to the floor. At that point, any arguable threat to Stille from the bottle had been eliminated. After the first break, Stille had Norton pinned against the wall and partially removed from her scooter. She was informed that Norton's arm was broken. Norton is said to have been "unstable" at that point. Stille, ignoring the audible first break in Stille's arm, proceeded to "take Norton down" breaking her arm a second time and eventually leaving her permanently disabled. "[E]ven to a reasonable [officer] in the heat

of the moment, the [officer's] interest in [controlling the situation] could not have justified" breaking the arm of a disabled woman two separate times when she posed no danger to the officer. *Id*.

Finally, Norton was not actively resisting arrest or attempting to evade arrest by flight. *See Graham*, 490 U.S. at 396. Although Norton may have defied Stille by grabbing a tissue, paper towels and a soda bottle, there is no indication that she was actively resisting or trying to flee. Norton was not only contained in a secure area, with other officers around, but she was limited in movement by the scooter and boot on one foot. It is hardly plausible that she would be fleeing anywhere quickly.

Taking into account the totality of the circumstances and balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake," *id*., Stille's use of force was excessive. Considering the facts in the light most favorable to Norton, it is difficult to conceive of any reasonable purpose that Stille would have had for breaking Norton's arm the first time, and it is even harder to justify the take down, when Stille allegedly knew Norton's arm was already broken. Stille had control of the situation, and given that Norton posed no identifiable threat to her safety, Stille's use of force was unreasonable and therefore violated Norton's Fourth Amendment right to be free from excessive force.

B.

We must also determine if Norton's rights were clearly established at the time of the incident. *Saucier*, 533 U.S. at 201. The relevant question is if it would have been "clear to a reasonable officer that [her] conduct was unlawful in the situation [s]he confronted." *Id*. at 202. A plaintiff must show that "[t]he contours of the right . . . [were] sufficiently clear that a reasonable official

would understand that what [she was] doing violate[d] that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). However, "there need not be a case with the exact same fact pattern, or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendants had 'fair warning' that their actions were unconstitutional." *Cummings v. City of Akron,* 418 F.3d 676, 687 (6th Cir. 2005) (quoting *Hope v. Pelzer,* 536 U.S. 730, 741 (2002)).

It is clearly established that officers may not use force on a detainee who is subdued and controlled. *See, e.g.*, *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009). "[P]eople who pose no safety risk to the police [have a right] to be free from gratuitous violence during arrest." *Shreve*, 453 F.3d at 688. When force is used on a detainee who poses no threat to officers or anyone else, that force is excessive and it is a violation of the detainee's Fourth Amendment rights. *Griffith v. Coburn*, 473 F.3d 650, 659-60 (6th Cir. 2007).

As discussed above, any conceivable threat to Stille had been eliminated long before Norton's arm was broken. After the bottle was already on the floor, Stille broke Norton's arm by pushing her up against a wall, and then broke it *again* by taking her down to the floor. It was clearly established law at the time of the incident that applying force to an incapacitated, subdued detainee was excessive. Therefore, it would have been clear to a reasonable officer that Stille's actions were unlawful at the time of the incident.

C.

Because Stille's actions, based on the facts as alleged by Norton and assumed by the district court for summary judgment purposes, were a violation of Norton's Fourth Amendment rights and

those rights were clearly established at the time of the incident, Stille is not entitled to summary judgment on the basis of qualified immunity.

III.

Stille additionally appeals the district court's refusal to bar Norton's suit under *Heck v. Humphrey*, 512 U.S. 477 (1994). The *Heck* doctrine has been interpreted to bar § 1983 suits that are attempts to invalidate a conviction. *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010). After her exchange with Stille during booking, Norton was charged under Michigan Compiled Laws § 750.81d(1) for obstructing and resisting. Stille argued on summary judgment that *Heck* bars Norton's suit. The district court dismissed this argument and Stille urges us to review this judgment on appeal. This Court, however, has no jurisdiction to do so.

The collateral order doctrine allows appeals from "a small category of decisions," which are "conclusive, . . . resolve important questions separate from the merits, and . . . are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers Cnty. Comm'n,* 514 U.S. 35, 42 (1995). The Supreme Court has cautioned, and this Court has held, that an appellate court's discretion in exercising jurisdiction over issues which are not directly reviewable is very limited. *Id*. at 42-51; *Vakilian v. Shaw*, 335 F.3d 509, 521 (6th Cir. 2003). The parties do not dispute that the district court's holding on the *Heck* issue is not independently reviewable under the collateral order doctrine; interlocutory review is permitted only if this court can exercise pendent appellate jurisdiction over the issue.

In order to exercise pendent appellate jurisdiction over a claim that is not independently appealable, the claim must either be inextricably intertwined with the appealable issue or must be "necessary to ensure meaningful review" of the appealable issue. *Swint*, 514 U.S. at 51. "Inextricably intertwined" has been interpreted by this Circuit "to mean that the resolution of the appealable issue 'necessarily and unavoidably' decides the non-appealable issue." *Vakilian*, 335 F.3d at 521; *see also, e.g., Chambers v. Ohio Dep't. of Human Servs.*, 145 F.3d 793, 797 (6th Cir. 1998) ("[S]uch jurisdiction only may be exercised when the appealable issue at hand cannot be resolved without addressing the non-appealable collateral issue."). This Court has similarly declined to exercise jurisdiction when resolving the issues requires application of separate or distinct legal questions. *Summers v. Leis*, 368 F.3d 881, 889-90 (6th Cir. 2004) (declining to review the district court's decision not to abstain under *Younger* because the issue required the application of "distinct legal standards" from the qualified immunity analysis over which the Court had jurisdiction).

The *Heck* issue is neither inextricably intertwined with, nor "necessary to ensure meaningful review" of, the qualified immunity claim. *See Swint*, 514 U.S. at 51. First, the analysis of the qualified immunity question did not "necessarily and unavoidably" decide the *Heck* question. If we were to resolve the *Heck* issue it would require a careful analysis of the Michigan criminal law, specifically M.C.L. § 750.81d(1) under which Norton was convicted, and its interaction with the Fourth Amendment. No such analysis was required for the qualified immunity claim. Therefore, separate and distinct legal standards and questions apply to each of the two issues and the *Heck* issue is not inextricably intertwined with the qualified immunity claim.

The *Heck* issue is furthermore not "necessary to ensure meaningful review" of the qualified immunity claim. The qualified immunity claim has been analyzed and would not benefit from consideration of the *Heck* issue. *Cf. Cunningham v. Gates*, 229 F.3d 1271, 1285 (9th Cir. 2000) ("The *Heck* issue is not 'inextricably intertwined' with the qualified immunity issues properly before us in interlocutory appeal, nor is it necessary to decide the issue to ensure meaningful review of the defendants' qualified immunity claims."); *Limone v. Condon*, 372 F.3d 39, 51 (1st Cir. 2004) ("Here, the linchpin [qualified immunity] issue and the pendent [*Heck*] issue cannot fairly be described as intertwined, let alone inextricably intertwined.").

IV.

For the foregoing reasons we affirm the district court on the issue of qualified immunity and find that we lack pendent appellate jurisdiction to hear the *Heck* claim.