NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0121n.06

No. 14-1544

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 10, 2015
DEBORAH S. HUNT, Clerk

WILLIAM DEENENE LUCIER,

     Plaintiff-Appellee,

v.

CITY OF ECORSE, ET AL.,

     Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

BEFORE:    DAUGHTREY, CLAY, and COOK, Circuit Judges.

**CLAY, Circuit Judge.** Defendants Police Officers Kevin Barkman and W. McCaig appeal from the March 27, 2014 order of the United States District Court for the Eastern District of Michigan granting in part and denying in part Defendants' motion for summary judgment in a 42 U.S.C. § 1983 suit brought against them by Plaintiff William Lucier. Defendants argue that they are entitled to summary judgment on the basis of qualified immunity.

For the following reasons, we **AFFIRM** the order of the district court granting in part and denying in part Defendants' motion for summary judgment.

## I. BACKGROUND

In his 42 U.S.C. § 1983 suit, Plaintiff alleges that Defendants used excessive force by tasing and slapping Plaintiff while executing his arrest in the basement of his home. Defendants argue that they are entitled to summary judgment on the basis of qualified immunity. Additionally, they contend that Plaintiff is barred from bringing his § 1983 excessive force

claims by *Heck v. Humphrey*, 512 U.S. 477 (1994), because the factual account relied on by Plaintiff impermissibly contradicts Plaintiff's previous guilty plea to resisting arrest. Both Plaintiff's and Defendants' versions of events on the night in question are summarized below.

## Factual History

### Undisputed Preliminary Facts

On the night of July 15, 2010, Plaintiff consumed a substantial amount of tequila. At some point during the early morning of July 16, 2010, Plaintiff's wife, Michelle Lucier, was awoken by the sound of Plaintiff pushing a large china cabinet full of dishes and other belongings onto the floor of their home. Upon seeing the broken cabinet and other furniture in a state of disarray, Mrs. Lucier called the police because "[she] didn't know if [Plaintiff] was going to continue breaking things." (R. 18-6, Deposition of Michelle Lucier, Page ID # 327-28.) In her 911 call, Mrs. Lucier said she needed help because "[my] husband's going crazy . . . . [H]e's throwing glass and breaking things everywhere." (R. 28, Plaintiff's Response, Page ID # 1024.)

Four police officers, including Defendants, responded to the call. By the time the officers arrived, Plaintiff had ceased the behavior that had prompted Mrs. Lucier's 911 call and was playing drums in the basement.

### Mrs. Lucier's Account of the Events in the Basement

Due to his inebriation, Plaintiff has no memory of the events that occurred in the basement. However, Mrs. Lucier testified that she was in the basement observing Plaintiff's interactions with the police officers throughout their exchange. Her description of the events served as the basis for the district court's decision to deny summary judgment as to the excessive force claims now at issue.

According to Mrs. Lucier, she accompanied the officers to the basement, where Plaintiff was playing drums loudly with his eyes closed. Plaintiff seemed not to notice the officers and did not initially respond to their attempts to get his attention. After failing to get his attention verbally, Officer Barkman grabbed one of the cymbals on Plaintiff's drum set, and Plaintiff opened his eyes. Plaintiff appeared shocked to see the police officers in the room. Mrs. Lucier testified that Plaintiff then stood up, dropped his drumsticks, and sat back down. At that point, the officers yelled "Taser, Taser," and "[t]asers start[ed] going off." (R. 28-3, Deposition of Michelle Lucier, Page ID # 1136.) Mrs. Lucier testified that Plaintiff never resisted the officers. After tasing Plaintiff, the officers "put their knees on him" and "put the cuffs on him." (*Id.* at 1137.)

Mrs. Lucier described that, once the officers had handcuffed Plaintiff and brought him to his feet, they dropped him back to the ground on his back. Throughout this episode in the basement, Mrs. Lucier yelled at the officers to stop because Plaintiff's "back was broke[n] in two spots." (*Id.* at 1136.) According to Mrs. Lucier, once Plaintiff was back on his feet, Officer Barkman slapped Plaintiff across the face "open-handedly" so hard that "[i]t echoed through [the] whole basement." (*Id.* at 1138.) The officers then led Plaintiff up the stairs and took him out of the house to a patrol car.

**Defendants' Account of the Events in the Basement**

Defendants' account of the events in the basement differs markedly from that of Mrs. Lucier. Neither Defendant recalls Mrs. Lucier accompanying the officers into the basement. According to Defendants, once Officer Barkman put his hand on the cymbal to get Plaintiff's attention, Plaintiff threw his drumsticks at the officers, hitting Officer Barkman's head and Officer Graham's knee. Plaintiff then "pushed his drums and started charging" at the officers.

(R. 18-7, Deposition of Kevin Barkman, Page ID # 378.)  In response, Officer Barkman withdrew his taser and yelled "Taser, Taser," and both he and Officer McCaig deployed their tasers in probe mode, aiming at Plaintiff's chest and/or abdomen.[1]  (*Id.* at 380.)  Plaintiff fell to the ground after being tased, at which point Officer Barkman put his knee on Plaintiff's back and handcuffed him.  According to Defendants, after Plaintiff stood up, he attempted to get away from the officers and fell back down.  While the officers were escorting Plaintiff up the stairs, he became belligerent and tried to spit at Officer Barkman's face, leading Officer Barkman to push Plaintiff's face away.

**The Events in the Patrol Car**

Once the officers had removed Plaintiff from his house, they placed him in the back of a patrol car.  Mrs. Lucier did not observe the events in the patrol car and has no personal knowledge of what transpired once Plaintiff was escorted out of the house.  Plaintiff remembers sitting in the patrol car and being asked to put his feet in the vehicle, but has no memory of what he said or did after hearing this command from the officers.  Accordingly, Defendants' account of the events in the patrol car is the only account of these events before the court.  Defendants claim that, after they had placed Plaintiff in the patrol car, he began kicking the officers and refused to put his legs in the vehicle.  After "several loud verbal commands to stop resisting and

---

[1] The district court provided the following explanation about the functionality of tasers:

> The taser has two modes, "dart mode" or "drive stun mode." [*Cockrell v. City of Cincinnati*, 468 F. App'x 491, 492 (6th Cir. 2012).]  In "dart" or "probe" mode, the gun propels a pair of barbed darts that penetrate the person's skin and override the central nervous system, causing "excruciating pain that radiates throughout the body," paralyzing the person and rendering [him] "limp and helpless." *Id.*  In "drive-stun" mode the darts are removed and the contacts on the gun are placed directly on the victim, delivering an electric shock but not overriding the nervous system as in dart mode. *Id.*

(R. 41, Opinion and Order, Page ID # 1482.)

to stop kicking," Officer McCaig deployed his taser in drive-stun mode on Plaintiff's hip. (R. 18-10, Deposition of William McCaig Ex. 2, Page ID # 543.)

**Plaintiff's Guilty Plea**

Following these events, Plaintiff was charged with assault, obstructing a police officer, and resisting arrest. Plaintiff pled guilty to resisting arrest in violation of City of Ecorse Ordinance § 17-21. Pursuant to Plaintiff's plea agreement, the assault and obstruction charges were dropped. Plaintiff did not provide specific details about his offense as part of his plea or at his plea hearing.

**Procedural History**

Plaintiff filed the instant action in state court. The matter was removed to federal court on May 9, 2012, and Plaintiff filed his Second Amended Complaint on August 10, 2012, alleging that Defendants violated his civil rights in effectuating the July 16, 2010 arrest. On April 12, 2013, Defendants filed a motion for summary judgment on the basis of qualified immunity. The district court entered its opinion and order on March 27, 2014, granting in part and denying in part Defendants' motion for summary judgment. The court denied the motion with respect to Plaintiff's excessive force claims arising from (1) Defendants' tasing of Plaintiff in the basement of his home and (2) Officer Barkman's slapping of Plaintiff while he was already handcuffed. The district court granted summary judgment in favor of Defendants on Plaintiff's other claims, including a claim of excessive force based on Defendants' tasing of Plaintiff after he had been placed in the patrol car. Defendants timely appealed.

## II. DISCUSSION

### Jurisdiction

An order denying qualified immunity is immediately appealable under 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). However, this Court may exercise jurisdiction over such an appeal only if it turns on an issue of law. *Kennedy v. City of Cincinnati*, 595 F.3d 327, 333 (6th Cir. 2010). A defendant entitled to invoke qualified immunity "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones,* 515 U.S. 304, 319-20 (1995). "[T]o the extent that the denial of qualified immunity is based on a factual dispute, such a denial falls outside of the narrow jurisdiction of this Court." *Harrison v. Ash*, 539 F.3d 510, 517 (6th Cir. 2008). This Court has jurisdiction to consider a defendant's argument that a § 1983 claim is barred by *Heck v. Humphrey* where, as here, the *Heck* argument is "inextricably intertwined" with the qualified-immunity defense. *McAdam v. Warmuskerken*, 517 F. App'x 437, 438 (6th Cir. 2013).

### Standard of Review

This Court reviews a district court's denial of summary judgment on the basis of qualified immunity *de novo*. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if the record "shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Schreiber v. Moe*, 596 F.3d 323, 329 (6th Cir. 2010). In a motion for summary judgment based on qualified immunity, all facts and related inferences must be viewed in the light most favorable to the non-moving party. *Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008). This Court may consider the question of qualified immunity

based on the facts most favorable to the plaintiff even if the defendant does not concede the plaintiff's version of the facts on appeal. *Smith v. Cupp*, 430 F.3d 766, 771–72 (6th Cir. 2005). All questions of law are reviewed *de novo*. *Davenport*, 521 F.3d at 550.

**Analysis**

***Heck v. Humphrey***

As a threshold matter, Defendants argue that *Heck v. Humphrey*, 512 U.S. 477 (1994) bars Plaintiff from relying on his wife's version of events to support his § 1983 excessive force claims as a matter of law. Because the *Heck* determination affects this Court's qualified immunity analysis, we consider Defendants' *Heck* argument first. In *Heck*, the Supreme Court held that if a state prisoner's success in a § 1983 suit for damages would "necessarily imply the invalidity of his conviction or sentence," then "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. "In this Circuit, if a plaintiff asserts a claim that contradicts an element of an underlying criminal offense . . . , *Heck* applies to bar the § 1983 suit." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 609 (6th Cir. 2014). To determine whether a § 1983 claim would imply the invalidity of a previous conviction, this Court must consider both "the claims raised under § 1983" and "the specific offenses for which the § 1983 claimant was convicted." *Schreiber*, 596 F.3d at 334 (internal quotation marks omitted). That both the § 1983 claims and the previous conviction are based on the same facts "is irrelevant if the two are consistent with one another." *Id.* The "*Heck* doctrine applies only where a § 1983 claim would '*necessarily*' imply the invalidity of a conviction." *Id.* at 335 (citing *Nelson v. Campbell*, 541 U.S. 637, 647 (2004)). "[I]f the district court determines that the plaintiff's action, even if successful, will *not*

demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Hayward*, 759 F.3d at 608 (quoting *Heck*, 512 U.S. at 487).

Defendants argue that Plaintiff's excessive force claims "impermissibly implicate the invalidity of his conviction for resisting arrest" because his claim is based on a factual account that necessarily contradicts Plaintiff's guilty plea. *Appellants' Br.* at 8. Their argument turns on the specific phrasing of the local ordinance under which Plaintiff pleaded guilty to resisting arrest, City of Ecorse Ordinance § 17-21. The ordinance reads:

> A person commits the offense of resisting arrest if he intentionally prevents or attempts to prevent a peace officer, acting under color of his official authority, from affecting [sic] an arrest of the actor or another by:
>
> (1) Using or threatening to use *physical force or violence* against the peace officer or another; or
>
> (2) Using any other means creating a substantial risk of causing *physical injury* to the peace officer or another.

City of Ecorse Ordinance § 17-21 (emphasis added). Under this ordinance, resisting arrest necessarily entails the use or threatened use of "physical force or violence" against officers, or the creation of a "substantial risk" of injury to officers. *Id.* According to Defendants, Mrs. Lucier's account of the events in the basement is inconsistent with Plaintiff's guilty plea because she does not describe Plaintiff as behaving in a manner that could reasonably be interpreted as violent or creating a substantial risk of injury to the officers. Defendants suggest that this apparent inconsistency between the local ordinance and Mrs. Lucier's factual account precludes Plaintiff from relying on her account to support his § 1983 claim.

We disagree. Contrary to Defendants' assertion, Mrs. Lucier's description of the events in the basement, if accepted as true, does not necessarily contradict Plaintiff's guilty plea or conviction. The factual basis of Plaintiff's guilty plea was never specified. Therefore this Court,

like the district court, cannot determine whether Plaintiff's plea was based on his behavior in the basement or on his subsequent behavior in the patrol car. Plaintiff does not deny that he was violent and belligerent while officers were placing him in the patrol car, resulting in Officer McCaig's deployment of a taser at him. Mrs. Lucier's testimony addresses *only* the events that occurred in the basement and does not speak to Plaintiff's conduct in the vehicle. Since Plaintiff's guilty plea may well have been wholly based on Plaintiff's belligerent behavior in the patrol car, Mrs. Lucier's factual account of the events in the basement does not necessarily contradict or "imply the invalidity of [Plaintiff's] underlying resisting arrest [plea]." *Hayward*, 759 F.3d at 610. Accordingly, a judgment in Plaintiff's favor on his §1983 excessive force claims would not necessarily invalidate his previous guilty plea, and these claims are not barred by *Heck*.[2]

---

[2] On appeal, Defendants make an ill-advised attempt to recharacterize Plaintiff's behavior in the patrol car, in violation of the doctrine of judicial estoppel. Under the doctrine of judicial estoppel, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *In re Commonwealth Institutional Sec., Inc.*, 394 F.3d 401, 406 (6th Cir. 2005) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). In their reply brief, Defendants claim that, "by the time Lucier was in the squad car, he had already been handcuffed and brought under control by the officers to remove him from his house. Any kicking therefore would not have been to prevent his arrest; he was already under arrest." *Appellants' Reply Br.* at 2. However, this statement directly contradicts Defendants' own representations to the district court. In Defendants' brief in support of their motion for summary judgment, Defendants asserted that, "while the Police Officers were attempting to put Plaintiff in the Police vehicle, he was still *resisting arrest* . . . . As a result of his *resistance* and the threat of danger to the Officers, Sergeant McCaig used a drive-stun taser to get him inside the vehicle." (R. 18, Brief in Support of Motion for Summary Judgment, Page ID # 162 (emphasis added).) On the basis of this factual representation, the district court granted Defendants' summary judgment motion with respect to Plaintiff's excessive force claim arising from the tasing in the patrol car.

Having already prevailed on their motion for summary judgment as to the patrol car tasing, Defendants are trying to have their cake and eat it too. Such an attempt to recharacterize the facts on appeal cannot prevail. *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002) ("[T]he doctrine of judicial estoppel is utilized in order to preserve the integrity of the courts by

**Qualified Immunity**

Having determined that *Heck* does not bar Plaintiff from relying on Mrs. Lucier's factual account, we may now proceed to consider the question of qualified immunity based on her account. *See Davenport*, 521 F.3d at 550 ("Once the facts are determined in the light most favorable to the plaintiffs, we can review the legal question of qualified immunity given that scenario, even if the defendant fails to concede the plaintiffs' version of the facts for purposes of appeal.")

Public officials are entitled to qualified immunity for civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (citation omitted). Qualified immunity is intended to strike a balance between the "need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* In evaluating whether an official is entitled to qualified immunity, the court must determine both whether "'the facts alleged show the officer's conduct violated a constitutional right' and whether that right was 'clearly established.'" *Cass v. City of Dayton*, 770 F.3d 368, 374 (6th Cir. 2014) (quoting *Saucier v. Katz,* 533 U.S. 194, 201-02 (2001)).

While individuals have a right to be free from excessive force during arrest, it is well-established that the government has a "right to use some degree of physical coercion or threat thereof" to effectuate an arrest. *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Claims alleging the use of excessive force during an arrest are considered under the Fourth Amendment's "objective reasonableness"

---

preventing a party from abusing the judicial process through cynical gamesmanship." (internal quotation marks omitted)).

standard. *Graham*, 490 U.S. at 388. Under this standard, the Court considers whether "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. This Court has identified three factors that guide this analysis: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Burgess v. Fischer*, 735 F.3d 462, 472-73 (6th Cir. 2013) (citations omitted).

Deployment of Tasers in the Basement

Plaintiff alleges that Defendants violated his constitutional right to be free from excessive force by tasing him in the basement of his home without any legitimate justification. This Court has held that, in the context of a police officer's taser use, "absent some compelling justification—such as the potential escape of a dangerous criminal or the threat of immediate harm—the use of a stun gun on a non-resistant person is unreasonable." *Bennett v. Krakowski*, 671 F.3d 553, 562 (6th Cir. 2011) (citation and internal quotation marks omitted). Where a police officer deploys a taser at an individual who is not actively resisting arrest, courts tend to hold that "a § 1983 excessive-force claim is available, since the right to be free from physical force when one is not resisting the police is a clearly established right." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 496 (6th Cir. 2012) (collecting cases). On the other hand, where a suspect is actively resisting arrest, "this Court has generally found no clearly-established right" to be "free from a taser shock." *Correa v. Simone,* 528 F. App'x 531, 535 (6th Cir. 2013) (collecting Sixth Circuit cases).

Viewing the facts in the light most favorable to Plaintiff, a reasonable juror could find that Defendants violated Plaintiff's clearly established Fourth Amendment right to be free from

excessive force when they tased him in the basement of his home. Under Mrs. Lucier's account, Plaintiff made no effort to resist arrest and did not pose any immediate threat to the safety of the officers or to any other individual prior to being tased. Because a genuine issue of material fact exists regarding whether Defendants violated Plaintiff's clearly established constitutional rights, Defendants are not entitled to summary judgment on the basis of qualified immunity as to the excessive force claim arising from the tasings that occurred in the basement.

Slap in the Face

Plaintiff further alleges that Officer Barkman violated his right to be free from excessive force by slapping him across the face while he was handcuffed. Although a slap may cause less physical trauma than a shock from a taser, "'[g]ratuitous violence' inflicted upon an incapacitated detainee constitutes an excessive use of force, even when the injuries suffered are not substantial." *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009). "[U]nder specific circumstances, a slap may constitute a sufficiently obvious constitutional violation" where a plaintiff is handcuffed and complying with officers' demands. *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x 509, 513 (6th Cir. 2006). In such cases, "a slap to the face of a handcuffed suspect—even a verbally unruly suspect—is not a reasonable means of achieving anything more than perhaps further antagonizing or humiliating the suspect." *Id.*; *see also Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 637 (6th Cir. 2003) (noting that a plaintiff "can clearly claim excessive force against [an officer] for [a] slap to the face").

Viewing the facts in the light most favorable to Plaintiff, the district court correctly concluded that, at the time of Plaintiff's arrest, his right to be free from "such acts of gratuitous force" was clearly established. (R. 41, Opinion and Order, Page ID # 1498.) Although Officer Barkman denies slapping Plaintiff, Mrs. Lucier claims that Officer Barkman slapped Plaintiff so

hard that "[i]t echoed through [the] whole basement." (R. 28-3, Deposition of Michelle Lucier, Page ID # 1138.) Since there is a genuine issue of material fact regarding the circumstances of the alleged slap, Officer Barkman is not entitled to summary judgment on the basis of qualified immunity on the excessive force claim involving the slap in question.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the order of the district court granting in part and denying in part Defendants' motion for summary judgment.