FILED
United States Court of Appeals
Tenth Circuit

July 31, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

HAZHAR A. SAYED,

    Plaintiff - Appellee,

v.

LT. PAGE VIRGINIA, Sterling
Correctional Facility; CAPT. MICHAEL
TIDWELL, Sterling Correctional Facility;
SGT. ROBERT HRADECKY, Sterling
Correctional Facility,

    Defendants - Appellants,

and

UNKNOWN JOHN DOE 1, C/O Sterling
Correctional Facility; UNKNOWN JOHN
DOE 2, C/O Sterling Correctional Facility,

    Defendants.

No. 17-1445
(D.C. No. 1:16-CV-02712-WJM-MJW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Hazhar A. Sayed was involved in an altercation with prison officials at Colorado's Sterling Correctional Facility (S.C.F.). As a result of the incident, he was convicted on two counts of assault. He later brought this action under 42 U.S.C. § 1983, claiming the defendant prison officials violated his First and Eighth Amendment rights by assaulting him in retaliation for filing a grievance. Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6), asserting they were entitled to qualified immunity—not because the complaint failed to allege a violation of clearly established law—but because the claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The district court denied the motion, ruling that defendants forfeited qualified immunity by failing to engage in any relevant analysis, that they were not entitled to it in any event, and, further, that the claims were not barred by *Heck*. Defendants filed this interlocutory appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the denial of qualified immunity. To the extent defendants appeal the district court's ruling under *Heck*, we dismiss the appeal for lack of jurisdiction.

I

Because this case was resolved on a motion to dismiss, we adopt the facts pleaded in the first amended complaint. *See Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). According to the first amended complaint, Mr. Sayed was called to S.C.F.'s control center, where he was met by defendants Captain Michael Tidwell, Lieutenant Page Virginia, Sergeant Robert Hradecky, and two unknown officers. Capt. Tidwell ordered him to step out to a vestibule area to discuss a grievance he filed against Lt. Virginia. Once outside, Capt. Tidwell "immediately struck"

2

Mr. Sayed "with his fist on the right side of [his] face, causing immense pain and injury to [his] right eye." R. at 43. Mr. Sayed "staggered backwards, raising [his] hands to fend off additional blows and begging for an explanation as to why [he] was hit." *Id.* Capt. Tidwell screamed that Mr. Sayed was snitching and if he did not stop, he would hit him every time he saw him. Mr. Sayed attempted to move away but he was "tackled by Sgt. Hradecky" and the two other unknown officers. *Id.* Mr. Sayed was then restrained and "punched and kicked by all," including Capt. Tidwell, who struck him "in the head and neck area repeatedly." *Id.* at 44. Mr. Sayed was unsure whether Lt. Virginia participated in the assault, but he knew she did not stop it.

At one point during the melee, Capt. Tidwell grabbed Mr. Sayed's little finger on his right hand and "twisted it, breaking it willfully and intentionally. He then stated[,] 'We're even now.'" *Id.* at 44. Afterwards, he announced on the intercom to all other inmates: "Hey everybody, Mr. Sayed is a federal informant and a snitch and he's serving a sentence for sexual assault and has a fake mittimus." *Id.* (internal quotation marks omitted). He then turned to Mr. Sayed and said, "See how we deal with snitches in S.C.F." *Id.* (internal quotation marks omitted). Mr. Sayed was put in segregation and was later transferred to the state penitentiary. He "was also served with false disciplinary reports, convicted of said [disciplinary violations,] and then charged with criminal assault against the officers." *Id.* He avers that he now suffers a permanent disability in his right hand.

Based on these allegations, Mr. Sayed claimed defendants violated his First Amendment right of access to the courts by retaliating against him for filing a

3

grievance. He also claimed defendants violated his Eighth Amendment rights, both by assaulting him and because Lt. Virginia did not stop the assault.[1]

Defendants moved to dismiss the suit under Rule 12(b)(6) based on qualified immunity. They recited the relevant qualified immunity standards in one paragraph that concluded, "For the reasons set forth below, [Mr.] Sayed fails to allege that Defendants violated his clearly established constitutional rights." *Id.* at 57. But the argument that followed did not address qualified immunity. Instead, defendants invoked *Heck*, which bars claims brought under 42 U.S.C. § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of [the plaintiff's] conviction or sentence." *Heck*, 512 U.S. at 487. According to defendants, *Heck* barred Mr. Sayed's claims because he had been convicted on two counts of assault as a result of the altercation. Defendants attached to their motion to dismiss three verdict forms indicating that Mr. Sayed had been found not guilty of first degree assault but guilty of second and third degree assault. Defendants argued that Mr. Sayed's claims necessarily implied that these convictions were invalid.

Mr. Sayed's response interpreted the motion to dismiss as raising two specific defenses: qualified immunity and *Heck*. As to the former, he argued that defendants were not entitled to qualified immunity because the first amended complaint stated plausible violations of his clearly established rights to be free from retaliation and

---

[1] Additionally, Mr. Sayed alleged that he lost personal property as a result of the incident, but on appeal, he denies that he separately pleaded a due process claim for the deprivation of his property. We do not consider the issue.

excessive force.  As to the latter, he argued that *Heck* should not bar his claims because they did not imply that his convictions were invalid.  He set forth the elements of second and third degree assault and explained that his claims would not negate any elements necessary to sustain his convictions.  He also pointed out that all of the actions for which he was convicted could have occurred *after* defendants' retaliatory actions.

Defendants' reply brief addressed only *Heck*, without mentioning qualified immunity at all.

A magistrate judge recommended that the motion to dismiss be granted, but the district court overruled that recommendation and denied the motion to dismiss. The court determined that defendants forfeited qualified immunity by failing to engage in any relevant analysis as to whether the first amended complaint alleged a violation of clearly established rights.  The court observed that defendants did not cite authority showing they were entitled to qualified immunity on the facts alleged, nor did they show the rights allegedly violated were not clearly established.  Further, the court determined that even if they had preserved their qualified immunity defense, the first amended complaint plausibly alleged violations of Mr. Sayed's clearly established constitutional rights and, thus, defendants were not entitled to qualified immunity.  Finally, the court ruled that Mr. Sayed's claims were not barred by *Heck*.  Defendants subsequently filed this interlocutory appeal challenging the district court's rulings.

## II

"The denial of qualified immunity is an appealable final order under 28 U.S.C. § 1291 if it turns on legal issues." *Keith v. Koerner*, 707 F.3d 1185, 1187 (10th Cir. 2013). "Determining whether a complaint sufficiently alleges a clearly established violation of law is an issue of law and, therefore, an appealable final decision over which we have jurisdiction." *Id.* We review this legal question de novo. *Id.*

"Although summary judgment provides the typical vehicle for asserting a qualified immunity defense, we will also review this defense on a motion to dismiss." *Peterson*, 371 F.3d at 1201. "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Id.* "At the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (brackets and internal quotation marks omitted). We consider "(1) whether the facts that a plaintiff has alleged make out a violation of constitutional right, and (2) whether the right at issue was clearly established." *Keith*, 707 F.3d at 1188 (internal quotation marks omitted). A plaintiff need "only allege enough factual matter" to state a claim that is "plausible on its face and provide fair notice to a defendant." *Id.* (internal quotation marks omitted).

### A. Forfeiture of Qualified Immunity

Defendants first challenge the district court's determination that they forfeited qualified immunity. They assert the court improperly required them to show that

6

they were entitled to the defense rather than require Mr. Sayed to show that qualified immunity was inappropriate. They point out that "[o]nce the defense of qualified immunity is raised, as it was in this case, a 'heavy [two-part] burden' is then shifted to the plaintiff to show that qualified immunity is not appropriate." Aplt. Br. at 13 (quoting *Buck v. City of Albuquerque*, 549 F.3d 1269, 1277 (10th Cir. 2008)).

The flaw in this argument, however, as revealed by defendants' citation to *Buck*, is that it employs the summary judgment standard for analyzing the qualified immunity defense. *See Buck*, 549 F.3d at 1277 ("In response to [defendant's] qualified immunity-based *motion for summary judgment*, the Plaintiffs must satisfy a heavy two-part burden . . . ." (emphasis added)). But defendants did not file a summary judgment motion—they raised qualified immunity in a motion to dismiss, which, as we have said, "subjects the defendant to a more challenging standard of review than would apply on summary judgment," *Peterson*, 371 F.3d at 1201. Again, on a motion to dismiss, we evaluate "the defendant's conduct *as alleged in the complaint*." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted). Thus, the district court did not improperly shift the burden to defendants to show they were entitled to qualified immunity; they assumed the more challenging standard by raising the defense at the motion-to-dismiss stage rather than at summary judgment.

Although the district court faulted defendants for failing to argue in favor of qualified immunity, the court correctly recognized that defendants did not address the dual qualified immunity inquiry—*viz.*, whether the complaint plausibly alleged a constitutional violation and whether the rights at issue were clearly established.

7

Indeed, defendants merely recited general qualified immunity principles in a five-sentence paragraph. They then proceeded with a *Heck* analysis, but they did not discuss the allegations in the complaint or dispute whether there was a constitutional violation or whether the rights asserted were clearly established. Nor did they address qualified immunity in their reply brief. This certainly suggests defendants forfeited qualified immunity, at least for purposes of Rule 12(b)(6).

Nevertheless, we have discretion to overlook a potential forfeiture. *See Cox v. Glanz*, 800 F.3d 1231, 1244-46 & n.7 (10th Cir. 2015) (exercising court's discretion to overlook a potential forfeiture under the clearly-established prong of the qualified immunity analysis, in part because the issue is a purely legal one). Therefore, assuming without deciding that defendants failed to preserve qualified immunity, we exercise our discretion to consider it on the merits and proceed to evaluate defendants' qualified immunity arguments.

B. *Qualified Immunity & Heck*

Defendants have not argued, either in the district court or on appeal, that, apart from *Heck*, the first amended complaint fails to state a violation of clearly established rights. In fact, they concede it does. *See* Aplt. Br. at 25 ("Absent the *Heck* argument, the facts set forth by [Mr.] Sayed, which described a malicious physical attack on his person by at least two correctional officers, would no doubt state a violation of the Eighth Amendment."). However, they insist they are entitled to qualified immunity precisely because the claims are barred by *Heck*. According to defendants, the district court erred in separately analyzing the two issues because they are

"'inextricably intertwined.'" *Id.* at 17 (quoting *McAdam v. Warmuskerken*, 517 F. App'x 437, 438 (6th Cir. 2013) (per curiam) (unpublished)). We are unpersuaded and lack jurisdiction to consider the district court's *Heck* determination.

Qualified immunity and *Heck* are analytically distinct doctrines: qualified immunity asks whether a defendant violated a constitutional or statutory right that was clearly established, *Thomas*, 765 F.3d at 1194; *Heck* evaluates whether a favorable judgment on a prisoner's § 1983 claim "would necessarily imply the invalidity of his conviction or sentence," 512 U.S. at 487. The *Heck* analysis does not bear on the qualified immunity inquiry, and because *Heck* issues are effectively reviewable on appeal while the denial of qualified immunity is not, courts generally decline to exercise jurisdiction over *Heck* issues raised on interlocutory appeal from the denial of qualified immunity. *See Cunningham v. Gates*, 229 F.3d 1271, 1284 (9th Cir. 2000) (holding that the denial of qualified immunity is an immediately appealable collateral order but *Heck* rulings are not because they are effectively reviewable on appeal); *id.* at 1284-85 (refusing to consider *Heck* issues under the court's pendent jurisdiction because "[t]he issues . . . on interlocutory appeal [from the denial of qualified immunity] are analytically distinct from the *Heck* analysis"); *see also Harrigan v. Metro Dade Police Dep't*, 636 F. App'x 470, 474-76 (11th Cir. 2015) (per curiam) (unpublished) (affirming denial of qualified immunity and separately holding that district court's *Heck* ruling was neither a final decision within the collateral order doctrine nor "inextricably intertwined with—or indeed even closely related to—the qualified immunity issue" because the doctrines "are governed

9

by entirely separate and unrelated analyses" (internal quotation marks omitted));

*Norton v. Stille*, 526 F. App'x 509, 512-15 (6th Cir. 2013) (unpublished) (affirming denial of qualified immunity and declining to exercise pendent jurisdiction over *Heck* issue because it was "neither inextricably intertwined with, nor necessary to ensure meaningful review of, the qualified immunity claim" (internal quotation marks omitted)); *accord Scott v. City of Pasadena*, 373 F. App'x 759, 759-60 (9th Cir. 2010) (unpublished) (dismissing appeal from the denial of qualified immunity because the *Heck* issue was not an appealable collateral order and the court lacked jurisdiction over a fact issue underlying the denial of summary judgment).[2]

Defendants insist the *Heck* issue is "inextricably intertwined" with their qualified immunity defense, but this argument invokes our pendent appellate jurisdiction and tacitly concedes that the *Heck* ruling is not by itself immediately appealable. Indeed, we have explained that the discretionary "exercise of our pendent appellate jurisdiction is *only* appropriate [1] when the otherwise nonappealable decision is inextricably intertwined with the appealable decision, or [2] where review of the nonappealable decision is necessary to ensure meaningful review of the appealable one[.]" *Cox*, 800 F.3d at 1256 (brackets in original) (internal quotation marks omitted). But "[a] pendent claim may be considered 'inextricably intertwined' only if it is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, when the appellate resolution of the

---

[2] We may consider non-precedential, unpublished decisions for their persuasive value. *See* Fed. R. App. P. 32.1.

collateral appeal *necessarily* resolves the pendent claim as well." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1148 (10th Cir. 2011) (internal quotation marks omitted).

Here, the district court's qualified immunity analysis was not related to its *Heck* analysis, and we need not consider the *Heck* issue to determine whether the allegations in the first amended complaint state a violation of Mr. Sayed's clearly established constitutional rights. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009) (holding that court of appeals had jurisdiction to consider the sufficiency of a complaint on interlocutory appeal from the denial of qualified immunity because "the sufficiency of respondent's pleadings is both inextricably intertwined with, and directly implicated by, the qualified-immunity defense" (citations and internal quotation marks omitted)). The *Heck* issue is neither coterminous with, nor subsumed in, the qualified immunity analysis. And nothing about the *Heck* inquiry is necessary to resolve qualified immunity based on the facts alleged in the first amended complaint, which we accept as true.[3] Consequently, it would be

---

[3] Much of defendants' opening brief disputes the district court's *Heck* ruling on the premise that "[t]he facts asserted by Sayed could *not* be true due to his criminal convictions." Aplt. Br. at 18. But as we indicated at the outset, this case was resolved on a motion to dismiss, so "we adopt the facts as stated in the complaint." *Peterson*, 371 F.3d at 1201. To the extent defendants attempt to challenge those facts, we lack jurisdiction over their appeal. *See Weise v. Casper*, 507 F.3d 1260, 1264 (10th Cir. 2007) ("[D]enials of qualified immunity based on a motion to dismiss are only immediately appealable to the extent they turn on issues of law.").

inappropriate for us to exercise pendent appellate jurisdiction over the *Heck* issue. *See Cox*, 800 F.3d at 1256.

*McAdam v. Warmuskerken* does not require a different result. In *McAdam*, the Sixth Circuit affirmed the denial of qualified immunity, concluding that three officers violated the plaintiff's clearly established rights. 517 F. App'x at 438. The court then separately analyzed the officers' *Heck* argument, stating it was "'inextricably intertwined' with their qualified immunity defense." *Id.* (citing *Chambers v. Ohio Dep't of Human Servs.*, 145 F.3d 793, 797 (6th Cir. 1998). But without explaining why the issues were inextricably intertwined, the court went on to hold that *Heck* did not bar the excessive force claims. *Id.*

*McAdam* confirms that qualified immunity and *Heck* are analytically distinct doctrines. Moreover, the citation to *Chambers* explains that "pendent appellate jurisdiction allows an appellate court . . . to exercise jurisdiction over issues that are not independently appealable when those issues are 'inextricably intertwined' with matters over which the appellate court properly and independently has jurisdiction." 145 F.3d at 797. Thus, consistent with our conclusion, *McAdam* recognized that the *Heck* issue was not independently appealable and that the court could resolve it only by exercising pendent jurisdiction. *See* 517 F. App'x at 438. Although the court found the *Heck* issue inextricably intertwined with qualified immunity, the court provided no explanation for that conclusion. *See id*. Without any such explanation, we are unpersuaded by this aspect of *McAdam*, particularly where the Sixth Circuit reached a different result in *Norton*, 526 F. App'x at 515 (concluding that *Heck* issue

12

was *not* inextricably intertwined with the qualified immunity defense). Accordingly, we decline to exercise pendent appellate jurisdiction over the district court's *Heck* ruling and dismiss the appeal to the extent it contests that issue.[4]

## C. Defendants Are Not Entitled to Qualified Immunity

The remaining issue is whether the first amended complaint plausibly states a violation of Mr. Sayed's clearly established rights. "To qualify as clearly established, a constitutional right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (internal quotation marks omitted). "A case clearly establishes a right when a Supreme Court or Tenth Circuit decision is on point, or the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Id.* (brackets and internal quotation marks omitted).

"It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (brackets and internal quotation marks omitted). Mr. Sayed alleged that defendants engaged in retaliatory conduct because he filed a grievance against Lt. Virginia. By alleging that defendants beat,

---

[4] The Sixth Circuit relied on *McAdam* in *Lucier v. City of Ecorse*, stating that a *Heck* issue was "inextricably intertwined with the qualified-immunity defense." 601 F. App'x 372, 376 (6th Cir. 2015) (unpublished) (internal quotation marks omitted). As in *McAdam*, however, *Lucier* offered no explanation for its conclusion, stating only that "[b]ecause the *Heck* determination affects this Court's qualified immunity analysis, we consider Defendants' *Heck* argument first." *Id.*

13

threatened, and harassed Mr. Sayed, and then put him in segregation in retaliation for filing a grievance, Mr. Sayed plausibly alleged that defendants violated his clearly established right of access to the courts.

Mr. Sayed also plausibly alleged a violation of his clearly established Eighth Amendment rights. "An [Eighth Amendment] excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Redmond*, 882 F.3d at 936 (brackets and internal quotation marks omitted). "An official has a culpable state of mind if he uses force maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline" *Id.* (internal quotation marks omitted). In addition, "Tenth Circuit precedent clearly establishe[s] . . . that a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983." *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996).

Mr. Sayed alleged that defendants beat him, broke his finger, and permanently disabled his right hand, all while Lt. Virginia watched and did nothing to stop it. Given these allegations, defendants were not entitled to qualified immunity. We therefore affirm the district court's denial of the motion to dismiss.

## III

The district court's judgment is affirmed.  The appeal is dismissed to the extent it challenges the district court's ruling under *Heck*.

Entered for the Court


Gregory A. Phillips
Circuit Judge